# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PETER J. LONG,**

    Petitioner,

v.                                         Case No. 17-CV-558

**DOUGLAS PERCY,**

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Peter J. Long seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket # 1.) Long was convicted of operating while intoxicated (OWI) 8th offense and sentenced to ten years, consisting of five years of initial confinement followed by five years of extended supervision. (*Id.*) Long alleges that his conviction and sentence are unconstitutional. For the reasons below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

The facts according to the court of appeals are as follows. Long was arrested for OWI after police stopped his vehicle on U.S. Highway 41. (*State v. Long*, Appeal No. 2014AP707-CR, ¶ 2 (Wis. Ct. App. Dec. 23, 2014), Docket # 11-5.) A resident in Long's apartment building in the town of Menasha had called the police when Long was pounding on a tenant's door demanding money. (*Id.*) The responding officer, Corey Colburn, tried to contact Long in his apartment, but he did not respond. (*Id.*) Colburn had dispatch call Long, and Colburn testified that he heard Long tell the dispatcher, in a loud voice, that he was in

Milwaukee. (*Id.*) Colburn informed Long, through his apartment door, that he was going to cite him for disorderly conduct. (*Id.*) Colburn left. (*Id.*)

About two hours later, at 1:22 a.m. on September 15, 2011, a different tenant called the police reporting that Long was driving to Milwaukee to kill his former cellmate. (*Id.* ¶ 3.) Colburn testified that the caller identified herself as a concerned friend. (*Id.*) The tenant told Colburn, on the telephone, that Long was possibly under the influence of alcohol or narcotics and that he was driving at speeds in excess of 120 miles per hour. (*Id.*) The tenant also told Colburn that Long planned to cut off the arm of his former cellmate and bring it back and cook it. (*Id.*) Colburn testified that the tenant was concerned for Long's safety and that of the other drivers on the road. (*Id.*) Colburn issued an attempt to locate (ATL) notice on Long and went to the tenant's apartment. (*Id.*) While he was there, Long called on the telephone. (*Id.*) The tenant put the call on speaker phone, and Colburn heard Long say that he was on the way to Milwaukee, traveling ninety miles per hour. (*Id.*) Long also said that he had had police contact earlier in the day and "he was going to go to jail so he wanted to have one last night of fun." (*Id.*) During this conversation, Colburn noticed that Long's speech was very loud and sounded slurred and that Long "appeared not to make a whole lot of sense." (*Id.*)

Washington County Deputy Sheriff John Binsfeld heard the ATL over his squad radio. (*Id.* ¶ 4.) Binsfeld read the teletype, which indicated that the subject had been involved in a disturbance earlier that evening and that officers were unable to make face-to-face contact, but had obtained information via telephone that Long was en route from Menasha to the Milwaukee area "to kill someone." (*Id.*) The ATL directed law enforcement to "stop, hold and advise," in other words, to stop the individual if in a vehicle, hold for the town of

Menasha, and attempt to locate and advise the town police of the stop to make a determination of what to do with Long. (*Id.*) The ATL contained a "please use caution" warning. (*Id.*)

Binsfeld set up on Highway 41 to try to find Long. (*Id.* ¶ 5.) He positioned himself at an exit between Menasha and Milwaukee and looked for Long's vehicle. (*Id.*) After he had identified Long's vehicle by its PWRHSE license plate, he called other squads to set up a "high risk traffic stop" because he was not sure if Long had weapons. (*Id.*) The stop was coordinated with two other deputies. (*Id.*) The deputies shut down traffic on the southbound side of Highway 41. (*Id.*) While following Long, Binsfeld saw him cross about a foot to a foot and a half over the fog line on the edge of the road for about fifty feet. (*Id.*) Binsfeld stopped Long's vehicle. (*Id.*) Binsfeld testified that in a high-risk situation like this, officers have the subject exit the vehicle instead of approaching, and have their weapons drawn. (*Id.*) When Binsfeld confronted Long, he noticed an odor of alcohol and observed that Long had glassy, bloodshot eyes. (*Id.*) Binsfeld administered field sobriety tests and ultimately arrested Long for OWI. (*Id.*)

Long moved to dismiss the case or suppress the evidence. (*Id.* ¶ 6.) Long argued that the evidence pointing toward his guilt was seized on the basis of an illegal stop. (*Id.*) As grounds, Long asserted that the law enforcement officers had acted without reasonable suspicion to stop him. (*Id.*) After a hearing (Docket # 11-20), the circuit court denied Long's motion and Long pleaded guilty to OWI (Docket # 11-5 ¶ 6). Long appealed the denial of his motion to suppress, and the court of appeals affirmed. (*State v. Long*, Appeal No. 2014AP707-CR (Wis. Ct. App. Dec. 23, 2014), Docket # 11-5.) Long filed a motion for

reconsideration that was denied, as was his petition for review in the Wisconsin Supreme Court. (Docket # 11-9, 11-12.)

Long subsequently filed a motion for post-conviction relief under Wis. Stat. § 974.06 arguing ineffective assistance of trial counsel, ineffective assistance of post-conviction counsel, a Fourth Amendment challenge to the warrantless, nonconsensual blood draw, and an *ex post facto* challenge. (Docket # 11-13.) After a *Machner* hearing (Docket # 11-22), the motion was denied and the court of appeals affirmed the denial. (*State v. Long*, Appeal No. 2016AP1069 (Wis. Ct. App. Feb. 22, 2017), Docket # 11-16.) The Wisconsin Supreme Court denied Long's petition for review. (Docket # 11-18.)

On habeas review, Long raises the issue raised on direct appeal, as well as the issues raised in his § 974.06 proceedings.

## STANDARD OF REVIEW

Long's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000)

4

(quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Long raises five grounds for relief in his habeas petition: (1) that the Wisconsin OWI penalty statute is an unconstitutional *ex post facto* punishment (Docket # 1 at 6–11); (2) that the statute violates due process and fundamental fairness under the Fourteenth Amendment (*id.* at 11–14); (3) that the warrantless, nonconsensual blood draw violated his due process rights and *Missouri v. McNeely*, 133 S. Ct. 1552 (2013) (*id.* at 14–17); (4) ineffective assistance of trial counsel (*id.* at 17–36); and ineffective assistance of postconviction/appellate counsel (*id.* at 36–37). I will address each argument in turn.

### 1.    *Wis. Stat. § 346.65(2)*

#### 1.1    *Ex Post Facto* Punishment

Long argues that Wis. Stat. § 346.65(2) is an unconstitutional *ex post facto* punishment as applied to him. (Docket # 1 at 6–11.) Wisconsin sentencing laws apply penalties to OWI offenses based on the number of prior convictions. Long explains that, prior to 1999, Wisconsin's sentencing laws only "counted" convictions for five- or ten-year periods. (*Id.*) Long asserts that he pleaded guilty or no contest to his first four OWI offenses (in 1989, 1991, 1996, and 1999) in reliance on the belief that they would no longer be "alive" and would be expunged from his record after five or ten years. (*Id.*) Beginning in 1999, however, Wis. Stat. § 346.65(2) began counting lifetime convictions for purposes of calculating penalties, including convictions before the law changed, and also eliminated the provision expunging prior convictions from criminal records. (*Id.*) Long asserts that this is unconstitutional retroactive punishment.

The Ex Post Facto Clause of Article One of the United States Constitution prohibits the prejudicial retrospective application of criminal laws. To violate the Ex Post Facto

clause, the legislation must (1) be penal or criminal in nature, (2) be retrospective, and (2) disadvantage the offender affected by it. *United States v. Couch*, 28 F.3d 711, 713 (citing *Collins v. Youngblood*, 497 U.S. 37, 41 (1990); *Miller v. Florida*, 482 U.S. 423, 430 (1987); *Weaver v. Graham*, 450 U.S. 24, 29 (1981); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594–95 (1952)). The Ex Post Facto Clause allows individuals to rely on existing law by preventing punishment for actions committed before those actions became illegal. *Id.* (citing *Weaver*, 450 U.S. at 28–29; *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 396 (1798) (Paterson, J.)).

In this case, the court of appeals cited to *State v. Schuman*, 186 Wis. 2d 213, 520 N.W.2d 107 (Wis. Ct. App. 1994) (Docket # 11-16 ¶¶ 17–18), which held that legislation creating penalty enhancers based on prior convictions for crimes committed after the legislation becomes effective does not run afoul of the Ex Post Facto Clause because the offender is given fair warning that subsequent offenses will be more severely punished as a result of prior offenses. *Id.* at 217–18. In so holding, the court of appeals in *Schuman* cited to governing Supreme Court cases. *Id*. Applying these principles to Long, the court of appeals reasoned that Long's case was sufficiently similar to *Schuman* that the same result should apply: when Long committed his eighth OWI, he had "fair warning that any subsequent offenses would be punished more severely as a result of his prior conduct." (*Id.* ¶ 18.)

This decision was not contrary to or an unreasonable application of Supreme Court precedent. While the application of this sentencing provision to Long was both penal in nature and prejudicial, it was not retrospective. It did not increase the punishment for Long's past crimes, but put him on notice that he would be subject to harsher penalties should he re-offend in the future. *See Gryger v. Burke*, 334 U.S. 728, 732 (1948) ("The sentence as a fourth offender or habitual criminal is not to be viewed as either a new

7

jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."); *United States v. Reddick*, 759 F. App'x 512, 514 (7th Cir. 2019) (imposition of career-offender enhancement for prior crimes committed before definition of crime was amended to include them did not violate Ex Post Facto Clause); *United States v. Jordan*, 870 F.2d 1310, 1315 (7th Cir. 1989) (using prior felonies to enhance punishment for a crime committed after enhancement provision enacted is not retrospective but prospective).

Additionally, Long contends that the statute's elimination of the expungement of prior convictions from his record is an improper *ex post facto* punishment because his guilty pleas were premised on the eventual expungement of the record. This argument also fails. Long offers no legal authority that the presence of a conviction on one's criminal record is part of the punishment for a crime, such that failure to expunge it after a certain period of time could constitute retrospective enhancement of the crime. Thus, Long cannot show that the court of appeals' decision was contrary to or an unreasonable application of Supreme Court precedent.

Because Long has not shown that the court of appeals' decision on his Ex Post Facto Clause claim was contrary to or an unreasonable application of Supreme Court precedent, he is not entitled to habeas relief on this ground.

  1.2  Due Process

Long argues that the Wisconsin OWI penalty statute violates due process and fundamental fairness under the Fourteenth Amendment. (Docket # 1 at 11–14.) However, this claim is not reviewable because Long did not exhaust it at the state level.

A federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his available state remedies prior to seeking federal habeas relief. *See* 28 U.S.C. § 2254(b); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). "This so-called exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus is the duty to fairly present his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). For a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). Whether a petitioner has done so depends on several factors, including: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004) (internal quotation and citation omitted).

In the relevant section of his appellate brief, Long presents his challenge to Wisconsin's OWI penalty statute under the framework of *ex post facto* punishment. (Docket # 11-13 at 45–53.) He mentions due process and the Fifth and Fourteenth Amendments, but only to argue that *ex post facto* punishments violate the Fifth and Fourteenth Amendments. Long's arguments before the court of appeals do not contain significant discussion of

Supreme Court due process precedent that would have provided the court with "a meaningful opportunity to consider" a due process claim separate from Long's *ex post facto* claim. *See Harding v. Sternes*, 380 F.3d 1034, 1047 (7th Cir. 2004) (holding that a brief reference to a constitutional right was insufficient to alert the court to the nature of the claim when the appellant otherwise framed it as a different question). Because Long did not fairly present his challenge to Wisconsin's OWI penalty statute as a due process claim at the state level, it is procedurally defaulted.

Procedural default due to failure to exhaust will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default or he can establish that the denial of relief will result in a miscarriage of justice. *Lewis*, 390 F.3d at 1026. Long does not argue that any such exception to procedural default should apply. Therefore, procedural default bars Long's due process claim.

### 2. *Missouri v. McNeely*

Long argues that the state courts' refusal to retroactively apply *Missouri v. McNeely*, 569 U.S. 141 (2013) to the warrantless, nonconsensual blood draw violated his due process rights under the Fifth and Fourteenth Amendments. (Docket # 1 at 14–17.) The state argues that Long forfeited this issue by not presenting it to the court of appeals as a constitutional due process issue.

I agree with the state. At the time of Long's arrest in 2011, under *State v. Bohling*, 173 Wis. 2d 529, 534, 494 N.W.2d 399 (1993), Wisconsin police could lawfully obtain a sample of a suspected drunk driver's blood without a warrant where there was no reasonable objection. *Bohling* explained that the dissipation of alcohol in the bloodstream constituted a *per se* "exigent circumstance" justifying a warrantless blood draw. *Id.* After Long's motion to

suppress was litigated but before he pleaded guilty, the U.S. Supreme Court decided *McNeely*, which announced that the dissipation of alcohol in the bloodstream was not a *per se* exigent circumstance that would alone justify a warrantless blood draw.

In his court of appeals brief, Long provided no argument based on *McNeely* under the Fifth Amendment, the Fourteenth Amendment, or Supreme Court due process precedent. Long's *McNeely* argument was couched primarily as an ineffective assistance of counsel argument (Docket # 11-13 at 42–43) and the court of appeals analyzed it as such (Docket # 11-16 ¶¶ 3–5, 13–15). Because Long did not raise in state court a constitutional due-process challenge based on *McNeeley*, he has failed to exhaust and, thus, procedurally defaulted any such claim. As with his due process claim, Long has not argued that any exception to the procedural default bar should apply. Accordingly, Long is not entitled to habeas relief on this claim.

### 3. *Ineffective Assistance of Trial Counsel*

Long argues that his trial counsel provided ineffective assistance by (1) failing to raise the warrantless, nonconsensual blood draw, (2) waiving the community caretaker argument, (3) failing to argue that there was no reasonable suspicion for the traffic stop, (4) failing to argue that there was no probable cause for the arrest, and (5) failing to call the anonymous reporting party to testify. (Docket # 1 at 25–35.) For the reasons below, Long is not entitled to habeas relief on his claim of ineffective assistance of trial counsel.

#### 3.1 Legal Standard

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Long must show both "that counsel's performance was deficient" and

11

"that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland's* performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

12

A court deciding an ineffective assistance claim need not approach the inquiry "in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Id.*

### 3.2 Application to this Case

In its decision on Long's post-conviction motion, the court of appeals identified the correct governing legal rule (Docket # 11-16 ¶ 4); therefore, the only issue me before is whether the state court unreasonably applied *Strickland* to the facts of Long's case or unreasonably determined the facts in light of the evidence presented.

#### 3.2.1 *Failure to Seek Suppression of Blood Draw Evidence*

Long argues that trial counsel erred by failing to file a motion to suppress the blood draw evidence. (Docket # 1 at 25–26.) The court of appeals determined that counsel was not deficient in failing to file such a motion because the blood draw was lawful under then-existing law. (Docket # 11-16 ¶¶ 13–15.) The court further explained that counsel was not deficient for failing to make a *McNeely* argument because its effects on Wisconsin law were as yet unclear, and even if the blood draw had violated *McNeely*, the good-faith exception to the exclusionary rule would apply to prevent suppression. (*Id.* ¶¶ 14–15.)

13

This conclusion was not contrary to or an unreasonable application of *Strickland*. Counsel's failure to raise a non-meritorious argument is neither deficient nor prejudicial, and therefore cannot constitute ineffective assistance of counsel. *See Perez v. United States*, 286 F. App'x 328, 331 (7th Cir. 2008) ("Failure to raise a losing argument or pursue a losing motion . . . does not constitute ineffective assistance.") (citing *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001); *United States v. Jackson*, 103 F.3d 561, 575 (7th Cir. 1996)); *see also Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) (performance not deficient for failing to make a futile objection); *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004) (where underlying claim is meritless, there is not reasonable probability of a different outcome absent the failure to raise it).

### 3.2.2   Community Caretaker Argument

Long argues that trial counsel was ineffective for failing to pursue an argument about the "community caretaker" exception. (Docket # 1 at 26–28.) In his motion to suppress before trial, Long argued that the "community caretaker" exception did not justify the stop of Long's vehicle, and the state conceded that it did not. (Docket # 11-16 ¶ 5 n.3.) Long believes that counsel's failure to pursue the "community caretaker" argument constituted a "waiver" of a winning argument and was therefore deficient. (Docket # 1 at 26–28.)

The court of appeals held that counsel was not deficient in its treatment of the "community caretaker" argument, stating:

> Long is misinformed as to the status of the law. Long won on the caretaker exception issue—the state conceded it was not applicable—but that does not end the analysis. We will not find trial counsel ineffective for failing to do what he was hired to do: provide alternative arguments to secure suppression of evidence.

(Docket # 11-16 ¶ 5 n.3.)

14

The court of appeals' finding of no deficiency was not contrary to or an unreasonable application of *Strickland*. Long appears to believe, incorrectly, that if the community caretaker exception does not apply, the government loses, and the evidence must be suppressed. This is not the case. The community caretaker exception functions as an alternate justification for a search or seizure; the other is reasonable suspicion or probable cause. Whether the community caretaker exception applies or not says nothing about whether police had reasonable suspicion to justify the traffic stop. Even if the community caretaker exception does not apply, police may still have reasonable suspicion or probable cause. Because there was no point in pursuing the community caretaker exception argument any further after the government admitted it did not apply, the court of appeals reasonably found that counsel was not deficient for failing to do so.

### 3.3.3 *Failure to Argue Reasonable Suspicion for Traffic Stop*

Long argues that trial counsel was ineffective for failing to argue that police did not have reasonable suspicion for the traffic stop due to a factual error in the timeline of the police's issuance of the ATL. (Docket # 1 at 28–32.)

In the trial court, Long had argued for suppression on the basis that there was not reasonable suspicion for the traffic stop. (Docket # 11-5 ¶ 6.) The trial court found that there was reasonable suspicion for the traffic stop, based in part on its finding that the ATL was issued after Colburn visited Long's neighbor to follow up on her call to police and heard Long on speaker-phone with slurred speech and claiming to be speeding. On appeal, Long maintained that Colburn issued the ATL before he visited the tenant, but the court of appeals declined to overturn the circuit court's factual finding. (Docket # 11-5 ¶ 3 n.1.) In its

15

decision on Long's postconviction motion, the court of appeals acknowledged that this was incorrect, and the ATL had in fact been issued before Colburn visited the tenant, but ruled that it did not affect the outcome. (Docket # 11-16 ¶ 10.) The court of appeals determined even if the attempt-to-locate was issued before Colburn heard Long on speaker-phone, there was already reasonable suspicion justifying a traffic stop. (*Id.* ¶¶ 4–12.) The court pointed out that Colburn responded to the first complaint by one of Long's tenants that evening and saw Long in his home. (*Id.* ¶ 9.) When Colburn tried to contact Long in his apartment, Long would not respond. (*Id.*) Colburn had dispatch call Long and overheard Long tell dispatch that he was in Milwaukee. (*Id.*) An hour later, a different tenant reported that she thought Long was on drugs or intoxicated and had told her that he was driving to Milwaukee at 120 miles per hour to kill a former cellmate. (*Id.* ¶ 10.) Colburn was able to assess her credibility because she stated that she lived in the same building as Long and was his friend, and provided details about their relationship, as well as her address and phone number. (*Id.* ¶ 11.) The court of appeals concluded that even without seeing the second tenant in person, the totality of the circumstances demonstrated reasonable suspicion for the investigatory stop, so counsel was not ineffective for failing to argue a meritless issue. (*Id.* ¶ 12.)

This conclusion was not contrary to or an unreasonable application of *Strickland*. As already noted, counsel's failure to raise a non-meritorious argument is neither deficient nor prejudicial, and therefore cannot constitute ineffective assistance of counsel. The court of appeals determined that there was reasonable suspicion for the traffic stop regardless of when the ATL was issued, and thus counsel was not deficient for not making a losing argument based on the timing of the ATL.

*3.3.4 Failure to Argue Probable Cause for Arrest*

Long also argues that counsel was ineffective for failing to argue that there was not probable cause to arrest him, claiming that the actions of police transformed the investigatory stop into an instantaneous arrest without probable cause. (Docket # 1 at 33–35.) In its decision on Long's post-conviction motion, the court of appeals pointed out that it had rejected on direct appeal Long's argument that he was arrested immediately after his vehicle was stopped. (Docket # 11-16 ¶ 12 n.2.) Thus, any such argument would have been futile, and failure to pursue a futile or losing argument cannot constitute ineffective assistance of counsel.

*3.3.5 Failure to Call Anonymous Reporting Party to Testify*

Long argues that trial counsel was ineffective for failing to call the anonymous reporting party, "ARP," to testify, even though she was present in the courtroom, and that post-conviction counsel should have timely argued ineffective assistance of counsel in the circuit court. (Docket # 1 at 35.) Long believes counsel should have elicited testimony to the effect that ARP had not seen Long face to face for three days so she had no basis for knowing that he was intoxicated or under the influence of narcotics, as well as ARP's motive for lying, namely, that she was behind on her rent payments to Long and in the process of being evicted. (*Id.*)

The court of appeals did not address this claim in its decision, despite the fact that Long raised it in his brief. (Docket # 11-13 at 36–37.) Even under *de novo* review, however, this claim presents no basis for habeas relief because it is entirely speculative; Long does not present any evidence supporting his claims about ARP's supposed testimony. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a

putative witness must generally be presented in the form of actual testimony by the witness or on affidavit . . . . [S]elf-serving speculation will not sustain an ineffective assistance claim."); *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991) (defendants alleging failure to call a witness must make "specific, affirmative showing as to what the missing evidence or testimony would have been"). Furthermore, counsel had a strategic reason not to attack ARP's credibility: as counsel noted at the *Machner* hearing, her story was at least somewhat true. (Docket # 11-22 at 66.) ARP told police Long was intoxicated and driving at a high rate of speed toward Milwaukee, and that is precisely how police found him. Because Long has not identified any deficiency in or prejudice arising from counsel's failure to call ARP to testify, he is not entitled to habeas relief on this claim.

### 4. *Ineffective Assistance of Post-Conviction Counsel*

Finally, construing Long's petition liberally, he argues ineffective assistance of post-conviction counsel for failing to argue ineffective assistance of trial counsel. (Docket # 1 at 36–37.) The court of appeals concluded that post-conviction counsel was not ineffective because trial counsel had not been ineffective, for all the reasons it had explained. (Docket # 11-16 ¶ 16 (citing *State v. Ziebart*, 2003 WI App 258, ¶ 15, 268 Wis. 2d 468, 673 N.W.2d 369).) This was not contrary to or an unreasonable application of federal law as, again, counsel cannot be constitutionally ineffective under *Strickland* for failing to raise losing arguments. Therefore, Long is not entitled to habeas relief on this claim.

## CONCLUSION

Long has failed to show that the court of appeals unreasonably applied Supreme Court precedent to the facts of his case or unreasonably determined the facts in light of the evidence presented. Thus, Long's petition for a writ of habeas corpus is denied.

# CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

Reasonable jurists could not debate that Long fails to raise cognizable constitutional claims and that several of his claims were procedurally defaulted. Thus, I will deny Long a certificate of appealability. Of course, Long retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Long's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of September, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge